IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-00011-PAB-MJW

BRISTOL COMPANY LIMITED PARTNERSHIP, a Nevada Limited Partnership,

     Plaintiff,

v.

BOSCH REXROTH INCORPORATED, a Pennsylvania corporation,
ROBERT BOSCH CORPORATION, a Delaware corporation, and
BOSCH REXROTH CANADA CORP/CORPORATION BOSCH REXROTH CANADA, a
Canadian corporation,

     Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

     This matter is before the Court on the parties' cross-motions for partial summary judgment regarding defendants' laches defense.  Docket Nos. 172, 180.  The motions are fully briefed and ripe for disposition.[1]  Pursuant to 28 U.S.C. § 1338 (a), the Court has original jurisdiction over this action, which arises under the U.S. Patent Act, 35 U.S.C. § 101 *et seq*.

I.    **BACKGROUND**

    A.  *Factual Background*

    Unless otherwise noted, the following facts are not in dispute: Plaintiff Bristol Company Limited Partnership ("Bristol") owns U.S. Patent Nos. 5,096,125 ("'125 Patent") and

---

[1]  The Court notes that Defendants' reply in support of their motion for summary judgment does not address the issue of laches. *See* Docket No. 192.

5,186,396 ("'396 Patent") which relate to vehicle-mounted devices for spreading ice- and snow-melting material on roadway surfaces.  For purposes of this order, the '125 Patent and '396 Patent may also be referred to collectively as "the Patents."  The Patents issued on May 17, 1992 and February 16, 1993, respectively.

On September 7, 1994, Bristol sent a letter to Basic Technologies ("Basic"), the defendants' predecessor-in-interest, notifying it of the existence of four patents, including the '125 and '396 Patents.[2]  Docket No. 178-12.  This letter does not mention infringement expressly or any particular product, including Basic's CS-230 device, for which Bristol had infringement concerns.  Around 1996, Bristol began to keep an eye on Basic's portfolio.  Docket No. 178-13.  Bristol sent an additional two letters to Basic regarding the Patents on November 4, 1997 and December 16, 1997.  Docket Nos. 178-14, -15.  On December 24, 1997, Basic responded by stating that it intended to review the Patents and would communicate its findings to Bristol.  Docket No. 178-16.  In June 1998, Basic obtained a non-infringement opinion from its legal counsel.  Docket No. 178-19, at BRCA 0056-00106.  Basic authorized Christina Pala, Basic's Manager of Administration, to obtain the opinion.  Docket No. 182 at ¶ 14.

Having received no further response from Basic, Bristol sent additional letters in February and May of 1998 requesting the results of Basic's review of the Patents.  Docket Nos. 178-17, -18.  Basic informed Bristol in July 1998 that, in its opinion, the devices did

---

[2]  The defendants do not explain when they acquired the subject interest from Basic.  Docket No. 182, Defs.' Brief at 1, ¶ 1.  Therefore, in setting forth this Background, the Court will refer to the interested party as either "Basic" or "Bosch," consistent with how the parties refer to them in their respective statements of fact.

not literally infringe the Patents.  Docket No. 178-20.  Following this communication, the parties did not communicate on this subject for six and one-half years.

At some point after 1998, Basic pursued certain business strategies, including developing the Compu-Spread business, hiring employees, and expanding the in-house development program for the CS-440 device, a new product.  Docket No. 178-22, de Waard Dep. at 67:24-68:11.  In 2002, Basic began marketing the CS-440 device.  Docket No. 172 at ¶ 8.

The parties' silence ended in December 2004 when Bristol sent a letter to Bosch specifically identifying the CS-230 and CS-440 devices and offering to license or sell the Patents.  Docket No. 178-21.  The parties engaged in further communications, which included the exchange of claim charts.  Docket No. 182 at ¶ 22; Docket No. 178-23.  Additionally, in one of these communications, Bosch noted the six and one-half years of silence and raised the issue of laches.  Docket No. 178-23.  Bristol then filed the instant suit against Defendants Bosch Rexroth Incorporated, Robert Bosch Corporation, and Bosch Rexroth Canada Corp./Corporation Bosch Rexroth Canada (collectively, "Bosch"). Docket Nos. 1, 24.

Approximately one year before filing the complaint, Bristol filed suit against its former patent counsel in Colorado state court ("State Court Action") alleging malpractice for counsel's alleged failure to inform Bristol of the possibility of a laches defense due to its delay in the bringing suit.  Docket No. 178-24, Complaint in State Court Action.  The Colorado state court dismissed the malpractice claims and, in doing so, concluded that

"Plaintiff first became aware of the Canadian company's alleged infringement on October 22, 1997, at the latest."  Docket No. 178-25 at 5, Order in State Court Action.[3]

## B.  *Procedural Background*

On January 4, 2006, Bristol filed this action [Docket No. 1] against Bosch alleging infringement of the '125 and '396 Patents.  Bosch asserted the defense of laches.  Docket No. 20, Answer; Docket No. 41, Answer to Am. Compl.; Docket No. 68, Answer to Second Am. Compl.  On March 24, 2010, Bristol filed a motion for summary judgment on Bosch's laches defense and, on May 12, 2010, Bosch filed its own motion seeking summary judgment on its defenses of noninfringement and invalidity as well as cross-moving for summary judgment on its laches defense.  Docket Nos. 172, 180-82.  It is the parties' cross-motions for summary judgment on the laches defense that are currently before the Court.  The Court will address Bosch's remaining motions for summary judgment of noninfringement and invalidity in a separate order.

## II.   ANALYSIS

### A.  *Legal Standard - Summary Judgment*

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish every essential element of its claim or affirmative defense.  *In*

---

[3]  Both parties proffer statements of fact surrounding the State Court Action.  To the extent the Court does not specifically address them herein, the Court does not find these facts relevant to the instant dispute.

*re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  By

contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may

satisfy its burden at the summary judgment stage by identifying a lack of evidence for the

nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate*

*Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead must

designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986); *see* FED. R. CIV. P. 56(e).

Only disputes over material facts can create a genuine issue for trial and preclude

summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir.

2005).  A disputed fact is "material" if under the relevant substantive law it is essential to

proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32

(10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a

reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d

837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in

the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708,

715 (10th Cir. 2010).  Furthermore, the Tenth Circuit has stated that, when parties have

"file[d] cross motions for summary judgment, we are entitled to assume that no evidence

needs to be considered other than that filed by the parties, but summary judgment is

nevertheless inappropriate if disputes remain as to material facts."  *Atlantic Richfield Co.*

*v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotations omitted).

**B.  *Laches***

Laches is an equitable defense that prevents a patentee who unreasonably sleeps on his rights from later seeking relief for infringement.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*).  Application of the laches defense requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice or injury to the defendant as a result of the delay.  *Id*. The application of the defense is committed to the sound discretion of the Court.  *Id*. at 1032.  In exercising its discretion, the Court must look at the particular facts and circumstances of the case and weigh the equities of the parties.  *Id.*

The length of the delay that may be deemed unreasonable has no fixed boundaries, but rather depends on the circumstances of each case.  *Id*.  Mere delay, without more, is not sufficient to bar suit under the doctrine of laches.  *Cornetta v. United States*, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988).  The period of delay begins when the patentee knew or should have known of his claim against the defendant but does not begin until the patent has issued.  *Aukerman*, 960 F.2d at 1032.

Material prejudice, either economic or evidentiary, is essential to the laches defense.  *Id*. at 1033.  Economic prejudice may arise when an accused infringer suffers "the loss of monetary investments or incur[s] damages which likely would have been prevented by earlier suit."  *Id*.  Courts generally look for a change in the accused infringer's economic position during the time of delay.  *Id*.  Nevertheless, a patentee may

6

not intentionally wait silently and watch damages increase. *Id.* "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events." *Id.*

A delay of more than six years after having actual or constructive knowledge of the alleged infringing activity results in a presumption of laches. *Id.* at 1035-36. If the presumption applies, the two underlying factors of unreasonable delay and prejudice are presumed. *Id.*; *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996). Once an accused infringer establishes a presumption of laches on summary judgment, the burden shifts to the plaintiff to rebut the presumption by offering proof that "rais[es] a genuine issue respecting either factual element." *Aukerman*, 960 F.2d at 1038. Thus, a patentee may eliminate the presumption by "offering evidence to show an excuse for the delay or that the delay was reasonable" or by offering evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue." *Id.* If the patentee presents such evidence, the presumption evaporates, and the accused is left to its proof. *Id.*

### 1.  Delay and the Rebuttable Presumption

As a threshold matter, the Court must determine the date on which "plaintiff knew or reasonably should have known of the defendant's alleged infringing activities." *Aukerman*, 960 F.2d at 1032. In this case, two different devices are accused of infringement: the CS-230 and CS-440. Because these devices were introduced to the market at different times, Bristol applies two different laches periods. Bosch does not

7

dispute that a separate delay period began upon the subsequent introduction of the CS-440 device.  Docket No. 188, Defs.' Resp. to Pl.'s Mot. Summ. J. at 5.  Accordingly, the Court will address the devices individually.

a) The CS-230 Device

Bosch contends that "Bristol has been aware of Defendants' activities since at least September 7, 1994, having sent a cease and desist letter to Basic on that date."  Docket No. 182 at 6; Docket No. 188 at 3, both citing Docket No. 178-12.[4]  Bristol disputes this allegation, but admits it was aware of the defendants' activities as early as 1997, pointing to its November 4, 1997 letter to Basic.  Docket No. 172 at ¶ 2.  Neither party offers an explanation as to why the other's contention is incorrect.

The Court does not need to determine who is correct, however, because under either scenario, a presumption of laches applies.  The shortest delay possible is the six and one-half years between Basic's July 1998 letter to Bristol asserting noninfringement and Bristol's December 2004 letter specifically identifying Bosch's CS-230 and CS-440 devices with an offer to license or sell the Patents.  Since this is more than six years, there is a presumption of laches.  *See Aukerman*, 960 F.2d at 1035-36.  To rebut the presumption of laches, Bristol can "offer[] evidence to show an excuse for the delay or that the delay was reasonable" or can offer evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue."  *Id*. at 1038.  Notably, Bristol appears to concede that its six and one-half-year delay was unreasonable and inexcusable, stating "[w]ith respect to the CS-230, [its] motion for summary judgment is

---

[4]  It appears that Bosch is not contending that Bristol should have known of the CS-230 device at the time in question even if it had no actual knowledge.  However, to the extent this is Bosch's argument, it has not offered any evidence to support it.

not based on an inability of Defendant to prove unreasonable delay." Docket 172 at 11.

As a result, Bristol has failed to rebut the presumption that its six and one-half-year delay

was unreasonable and inexcusable.

b) The CS-440 Device

The parties do not dispute that Bosch began marketing a new product, the CS-440

device, in 2002 and agree that a four-year delay should apply. Docket No. 172 at ¶ 8, at

12; Docket No. 188 at ¶ 8, at 5.

Because this delay is less than six years, laches is not presumed. *Aukerman*, 960

F.2d at 1028. Nevertheless, Bosch asserts that this delay is unreasonable because

Bristol delayed filing suit in order to allow Bosch's sales to increase, thereby making the

case more attractive to an attorney to take on a contingent fee basis. Docket No. 188,

Defs.' Resp. at 5; Docket No. 182, Defs.' Brief at ¶ 21; Docket No. 187, Pl.'s Resp. at ¶

21. In support, Bosch proffers the following deposition testimony of Bristol's John

Doherty:

> Q: Other than not wanting to sue from 1998 until when the suit
> was eventually filed at the end of 2005, are there any other
> reasons that you did not sue?
>
> A: We were looking at the financial situation with Bristol. We
> knew that Bosch was continuing to sell product which would
> increase the damage base. We were looking and – we were
> looking for some attorney that would take this on a contingency
> basis. Obviously the bigger the damages, the better that looks
> to someone realistically, but I mean, we – I don't – I don't know
> – again, I'm not trying to be argumentative. We're never
> required to file a suit to protect the patent.
>
> Q: And one of the reasons you waited so that – was so that
> Bosch would sell more products and your damage Claim would
> be larger?

A:  That was in our mind, yeah.

Docket No. 178-10 at 4.

Bristol disputes Bosch's characterization of this testimony and adds that "Bristol was in the same circumstance as many other patentees, unable to fund an infringement suit typically costing $500,000-$1,000,000 immediately upon noting an infringing product in the market."  Docket No. 187, Pl.'s Resp. at ¶ 21.  Bristol, however, provides no evidentiary support for this proposition.[5]

Nevertheless, Mr. Doherty's testimony, when viewed in the light most favorable to Bristol, demonstrates there is a triable issue of fact as to whether its four-year delay is unreasonable and inexcusable.  In this regard, Bosch conflates circumstances that make a delay unreasonable with those that fail to excuse an unreasonable delay.  While poverty and a patentee's inability to find willing counsel have both been widely rejected as an excuse to an unreasonable delay, *see Hall*, 93 F.3d at 1554 (citing *Leggett v. Standard Oil Co.*, 149 U.S. 287 (1893) and others), Bosch has cited no precedent suggesting the inability to find counsel willing to take a case on contingency is sufficient "aggravating conduct" to deem a four-year delay unreasonable.  In fact, in neither of the cases relied upon by the defendants did the court find the four-year delay unreasonable.  *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir. 1992) (finding error with district court's

_____

[5]  Bristol cites a "Doh aff." as support for its inability to fund a patent infringement suit during the time in question.  This vague citation is contrary to this Court's practice standards, which require that "[a]ny denial shall be accompanied by . . . . a **specific reference** to material in the record supporting the denial."  Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv. (emphasis in original).  The Court has not been able to locate such an affidavit in the record and, therefore, cannot consider Bristol's allegation of fact.  In any event, Bristol's allegation has no effect on whether the parties have established a genuine issue of material fact sufficient to avoid summary judgment as set forth herein.

10

conclusion that delay was unreasonable); *IXYS Corp. v. Advanced Power Tech., Inc,* 321 F. Supp. 2d 1156, 1164 (N.D. Cal. 2004) (finding that a triable issue of fact existed regarding whether four-year delay was unreasonable).

Additionally, Bosch has not presented evidence of any other conduct that has traditionally been found sufficiently egregious or misleading to deem a four-year delay unreasonable.  Specifically, there is no evidence that Bristol took a position that it later tried to alter or that it expressly threatened litigation and then delayed bringing suit.  *See*, *e.g.*, *Asics*, 974 F.2d at 1307.  Rather, in its letters to Bosch, Bristol did not expressly mention litigation and, in at least one instance, raised the possibility of a license or assignment of the Patents.  Docket No. 178-10, Doherty Dep. at 26:16-25; Docket No. 178-21, Bristol's Dec. 22, 2004, Letter; *cf. Asics*, 974 F.2d at 1307 (finding erroneous district's courts conclusion that four-year delay was unreasonable when negotiations occurred during that period).

Therefore, in light of the evidentiary record, the Court cannot find Bristol's four-year delay unreasonable as a matter of law.  A triable issue of fact remains.

### 2. *Prejudice*

Bosch contends that it suffered prejudice in the form of both economic and evidentiary prejudice.

In order to establish economic prejudice, "the infringer must prove that the change in economic position would not have occurred had the patentee sued earlier."  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 775 (Fed. Cir. 1995).  "It is not enough that the alleged infringer changed his position - *i.e.*, invested in production of the allegedly

infringing device.  The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992); *see State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1066 (Fed. Cir. 2003).  Prejudice cannot result "from a business decision or gamble that the patent owner would not sue." *Gasser Chair*, 60 F.3d at 775.  Indications that a party would not have acted differently had suit been brought earlier include continuing to sell and design products after suit was ultimately filed, *Asics*, 974 F.2d at 1308; *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled on other grounds by Aukerman*, 960 F.2d 1020 (Fed. Cir. 1992) (overruling based on burden of proof); *IXYS*, 321 F. Supp. 2d at 1165, and firmly believing that the patent is not infringed, *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001)*; Asics*, 974 F.2d at 1308, or that the patent is invalid.  *Gasser Chair*, 60 F.3d at 775; *IXYS*, 321 F. Supp. 2d at 1165.

To establish evidentiary prejudice, the accused infringer must proffer more than conclusory statements as to missing evidence and faded memories.  *Asics*, 974 F.2d at 1308.

While Bosch proffers the same evidence of prejudice for both devices, the Court must look at them separately given the presumption that applies with respect to the CS-230 device, but not the CS-440 device.

                a)   The CS-230 Device

As determined above, laches is presumed with respect to the CS-230 device and Bristol did not rebut the presumption with respect to the delay element.  Therefore, as to

the prejudice element, Bristol has the burden to rebut the presumption by offering proof that raises a material issue of fact respecting **both** economic and evidentiary prejudice. *Aukerman*, 960 F.2d at 1038.  If Bristol meets this burden, Bosch must present evidence sufficient to demonstrate why summary judgment should not be entered against it.

(i) *Economic Prejudice*

Bosch claims it has suffered economic prejudice because, during the period of delay, it "pursued certain business strategies, including growing the Compu-Spread business, hiring employees, and expanding the in-house development program."  Docket No. 182 at ¶¶ 10, 11; Docket No. 188 at 6.  Bristol does not dispute that Bosch took such action.  Docket No. 187 at ¶¶ 10, 11.  Rather, the dispute lies in whether Bosch's actions were taken as a result of Bristol's delay.

For the most part, the evidence relied on by the parties to support their positions is the same and consists of deposition testimony of Boyd de Waard, Bosch's President and Rule 30(b)(6) representative.  Docket No. 172, Pl.'s Mot. Summ. J. at ¶¶ 10-13, at 15-16; Docket No. 188, Defs.' Resp. at ¶ 10; Docket No. 182, Defs.' Brief at ¶¶ 10-11; Docket No. 187, Pl.'s Resp. at ¶¶ 10-11.  Mr. de Waard's testimony was taken as part of the State Court Action in April 2006, just a few months after the instant case was filed.  Since this testimony controls the analysis on this issue, the relevant portions are set forth below.

> Q: Tell us just as best you can recall what your next involvement was with respect to Bristol and Doherty contacting Basic about its patent and about Basic's product?
>
> A: Well, once we'd received word from the patent firm that we'd involved that there was no infringement, we felt the matter was closed and proceeded on with our next level of development of our program.

Q: After this July 1998 letter was sent by Mr. Milot to Jack Doherty, were you aware whether that same year in 1998 Mr. Doherty responded to the letter?

A: I don't know that.  I can only say that as of this moment once we saw that particular opinion that for me the matter was closed, and I probably shut that chapter or that component of my mind down on the matter.

         *      *      *      *      *      *

Q: . . . Had Basic been sued in 1998 would it have acted differently than it did? . . .

A: Clearly, if there would have been any concern about patent infringement on our part we would not have continued to develop the program.  We would not have elevated the Compu-Spread business from a product line to a business unit. We would not have brought in the talent that we brought in. We would not have taken the CS440 development in house if we felt there was any risk of us being in infringement.  And as I've said on a number of occasions, the fact that we received this opinion for our purposes certainly meant that we were clear and able to proceed with the development of a market and a product which we felt was appropriate and useful.

Q: Had there been a lawsuit in 1998 would that have influenced decisions by Basic/Bosch about devoting resources to the development of a new 440 controller?

A: Had there been a lawsuit there would have been more deliberation, and that's as far as one could comment . . . .

         *      *      *      *      *      *

Q: Did the company consider trying to design around the Bristol patents after it had received the opinion of patent counsel?

A: To the best of my knowledge when we received this – this opinion, life went on.  We made no particular adjustments or did anything in particular to modify our engineering to the best of my knowledge.

         *      *      *      *      *      *

Q: Are you claiming that had a lawsuit been commenced by [Plaintiff] Bristol in 1998 that Bosch Rexroth [Basic] would not have incurred some or all of these costs?

A: I've said before that had we been of the opinion that there was infringement, this would not have gone forward.  I cannot say what would have happened had there simply been a lawsuit.

\*      \*      \*      \*      \*      \*

Q: . . . If you would have been sued in 1998 is it possible that you could have followed some other course of action?

A: No.  I think I addressed that very thing a few minutes ago where had we been sued, we would have had to await the outcome and then determine what course of action would have been done.  I think that's obvious.  But it would have depended on the outcome of that particular suit.

Docket No. 172, Pl.'s Mot. Summ. J. at ¶¶ 10-13, at 3-9 (objections omitted).  In addition to the above, Bristol submitted testimony of Mr. de Waard establishing that Bosch did not discontinue or redesign any products as a result of Bristol filing suit in 2006.  *Id*. at ¶ 13. Bosch also submitted a May 10, 2010 declaration of Mr. de Waard (dated four years after his state court testimony) in which he attests that Bosch's business strategies were made in "direct reliance on Bristol's deliberate silence."  Docket No. 182, Defs.' Brief at ¶ 10; Docket No. 182-1, de Waard Decl. at ¶¶ 4-5.

The primary dispute between the parties revolves around their differing interpretations of Mr. de Waard's testimony.  Bosch alleges the testimony shows the investments it made were in "direct reliance upon Bristol's deliberate silence" because, had Bristol filed suit in 1998, "Bosch would have acted differently, including engaging in 'more deliberation.'"  Docket No. 182, Defs.' Brief at ¶ 10, at 8; Docket No. 188, Defs.' Resp. at 7.  Bristol, on the other hand, contends the testimony shows Bosch would not

15

have acted differently because Bosch was relying on its belief the Patents were not infringed, as opposed to Bristol's silence.   Docket No. 172, Pl.'s Mot. Summ. J., at 15-16.

For the following reasons, the Court agrees with Bristol.   Mr. de Waard's testimony is replete with references to its counsel's opinion of noninfringement: "once we'd received word from the patent firm that we'd involved that there was no infringement, we felt the matter was closed and proceeded on with our next level of development of our program"; "I can only say that as of this moment once we saw that particular opinion that for me the matter was closed"; "if there would have been any concern about patent infringement on our part we would not have continued to develop the program"; "the fact that we received this opinion for our purposes certainly meant that we were clear and able to proceed with the development of a market and a product"; "To the best of my knowledge when we received this – this opinion, life went on"; "I've said before that had we been of the opinion that there was infringement, this would not have gone forward."   Bosch cites to no portion of Mr. de Waard's testimony in which he suggests that Bosch relied on Bristol's silence for the six and one-half-year period when implementing its business strategies.   Indeed, Mr. de Waard was consistent in his testimony that Bosch determined its course of conduct as soon as it received its noninfringement opinion from counsel and that, while it would have engaged in further deliberation about such conduct had it been sued, its conduct would have changed only upon a particular outcome from the suit.   Furthermore, Bosch's reliance on its belief of noninfringement is confirmed by Bosch's later actions: it continued to sell and design products despite Bristol's suit in 2006.   Accordingly, the Court finds that no reasonable jury could conclude from Mr. de Waard's testimony that Bosch acted in direct reliance on Bristol's silence when it implemented its business strategies.   Bristol has

16

succeeded in rebutting the presumption on the issue of economic prejudice.

The Court must, therefore, consider whether Mr. de Waard's later declaration is sufficient to create a triable issue of fact. Bristol claims this declaration should not be considered on summary judgment because it contradicts his prior deposition testimony. Docket No. 187, Pl.'s Resp. at 3 (citing Seventh Circuit case law). Bosch did not respond to this argument. *See* footnote 1, *supra*.

The Court will disregard a contrary statement if it "constitutes an attempt to create a sham fact issue." *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). Relevant factors the Court will consider when determining whether the statement presents a sham issue include "[1] whether the [declarant] was cross-examined during his earlier testimony, [2] whether the [declarant] had access to the pertinent evidence at the time of his earlier testimony or whether the [declaration] was based on newly discovered evidence, and [3] whether the earlier testimony reflects confusion which the [declaration] attempts to explain." *Id*.

Applying these factors to Mr. de Waard's declaration, it is evident the contradictory statements were provided solely in response to Bristol's summary judgment motion in an attempt to create a sham fact issue. Mr. de Waard appears to have been represented by counsel during his State Court Action testimony, who objected throughout the deposition and who could have asked Mr. de Waard clarifying questions. Additionally, Bosch makes no claim that the newly-presented declaration is based on evidence that was unavailable in 2006. Lastly, the declaration does not clarify prior confusion on the part of Mr. de Waard. Mr. de Waard's testimony was consistent and unambiguous. Accordingly, Mr. de

17

Waard's declaration does not demonstrate a triable issue of fact.  Bristol has sufficiently

shown that Bosch did not suffer economic prejudice as a result of its delay.

(ii)  *Evidentiary Prejudice*

The Court must also determine whether Bristol can rebut the presumption by

offering proof to raise a genuine issue regarding evidentiary prejudice.  Bosch contends

that it suffered evidentiary prejudice in the form of "loss of documentation relating to

development and prior art [and] the inevitable failure of witnesses' memories over time,

and the intervening death of an individual who very likely would have been a key witness

for Bosch, Christine Pala."   Docket No. 188, Defs.' Resp. at 8; Docket No. 182, Defs.'

Brief at ¶ 13, at 9; Docket No. 182-1, de Waard Decl. at ¶ 7.

Bristol contends such prejudice is absent because Bosch still has available its

noninfringement opinion, which lists the materials relied upon by the expert in rendering

the opinion [Docket No. 178-19, Opinion at 4, n.1], and because Ms. Pala's testimony

would have added nothing to the case.  Docket No. 187 at ¶ 13.  Bristol also points to the

deposition testimony of Mr. de Waard in the State Court Action which reflects Bosch's

consistent belief in noninfringement.  Docket No. 187, Pl.'s Resp. To Defs.' Mot. Summ.

J., at 2, ¶ 1; Docket No. 187-1, Jablonski Decl. at 6.  This evidence is sufficient to place

Bosch's alleged evidentiary prejudice in genuine dispute and, therefore, to rebut the

presumption.

The Court must next determine whether Bosch has demonstrated a triable issue of

fact sufficient to withstand summary judgment in favor of Bristol on this issue.  Bosch first

proffers the declaration of Mr. de Waard in which he claims Bristol's delay resulted in "the

loss of documentation relating to development and prior art [and] the inevitable failure of

18

witnesses' memories over time . . . ."   Docket No. 182-1, de Waard Decl. at ¶ 7.   Yet

Bosch fails to identify a single document or other piece of evidence that is now missing,

including any of the materials cited in the opinion itself.   Bosch also alleges that the

intervening death of Ms. Pala, who "would have had conversations with the lawyers who

provided the non-infringement opinion," has somehow left it disadvantaged.   Docket No.

182, Defs.' Brief at ¶ 14, at 9; Docket No. 188, Defs.' Resp. at 8; Docket No. 182-1, de

Waard Decl. at ¶¶ 7-8.   Here, too, Bosch fails to explain how or why her testimony is

important to Bosch's defense.   Instead, Bosch simply states that she "very likely would

have been a key witness for Bosch."   Docket No. 182, Pl.'s Brief at 9.   These conclusory

statements are a legally inadequate means of defeating a motion for summary judgment.

*Asics*, 974 F.2d at 1308 ("Conclusory statements that there are missing witnesses, that

witnesses' memories have lessened, and that there is missing documentary evidence, are

not sufficient."); *Brooks*, 912 F.2d at 1464 ("[T]he affidavit says that documents relating to

the allegedly infringing shoes have been lost or destroyed, but general statements like that

are not sufficient."); *see also Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1418

(10th Cir. 1993) ("Conclusory statements are insufficient to defeat a motion for summary

judgment"), *overruled on other grounds by Davidson v. America Online, Inc.*, 337 F.3d

1179 (10th Cir. 2003).   Bristol has successfully demonstrated the absence of a genuine

issue of material fact surrounding Bosch's alleged evidentiary prejudice.   Accordingly,

Bristol is entitled to summary judgment on Bosch's defense of laches for the CS-230

device.

b)   <u>The CS-440 Device</u>

Bosch does not enjoy the benefit of the presumption of laches for the CS-440

19

device.  Bosch has already established that a triable issue of fact exists as to whether Bristol's four-year delay was unreasonable and inexcusable.  However, to survive Bristol's motion for summary judgment, Bosch must also make an adequate demonstration of prejudice, either economic or evidentiary, during the four-year period between 2002 and 2006.

On this issue, the parties presented the same evidence as that discussed above with respect to the CS-230 device.  As such, Bosch's evidence fails to defeat summary judgment with respect to the CS-440 device for the same reasons it did so with respect to the CS-230:  Mr. de Waard's testimony shows that Bosch relied on its opinion of noninfringement as opposed to Bristol's delay when changing its economic position, and Bosch's conclusory statements about missing and unavailable evidence cannot establish evidentiary prejudice upon a motion for summary judgment.

Furthermore, the relevance of Bosch's evidence is more attenuated for the CS-440 device.  For example, Mr. de Waard's testimony does not explicitly identify *when* Bosch's economic position changed, before or after the market introduction of the CS-440.  Nevertheless, his testimony suggests that the change occurred prior to the CS-440's introduction and, thus, logically could not be a result of the delay following 2002.  Docket No. 172, Pl.'s Mot. Summ. J. at ¶ 10, at 5 ("We would not have taken the CS440 development in house if we felt there was any risk of us being in infringement.").  As a result, there is little or no evidence that Bosch incurred any change in its economic position post 2002.

Moreover, Mr. de Waard testified that Bosch's belief in noninfringement was consistent from 1998 to 2006, encompassing the time period relevant to the CS-440.

20

Docket No. 172, Pl.'s Mot. Summ. J. at ¶ 10, at 7.  This testimony, coupled with that discussed above regarding Bosch's reliance on its noninfringement opinion, demonstrates that, even if Bosch had incurred a change in its economic position, it was a result of its firm belief that its products did not infringe and not Bristol's four-year delay.

Lastly, Bosch fails to apprise the Court when Ms. Pala's death occurred, either before or after the 2002 introduction of the CS-440 device.  Without this information, the Court cannot conclude whether the alleged prejudice resulted from the delay following 2002 or whether it would have been present irrespective of the delay.

## III.   CONCLUSION

For the foregoing reasons, the Court finds that laches is presumed with respect to the CS-230 device due to Bristol's at least six and one-half-year delay in filing suit.  Bristol was able to rebut the presumption and demonstrate the absence of a triable issue of fact that economic and evidentiary prejudice resulted from the delay.

The Court also finds that the delay concerning the CS-440 device is less than six years and, thus, laches is not presumed.  As with the CS-230 device, Bristol was able to demonstrate the absence of a triable issue of fact that economic and evidentiary prejudice resulted from the delay.  It is, therefore,

**ORDERED** that plaintiff Bristol Company Limited Partnership's motion for summary judgment on the defense of laches [Docket No. 172] is GRANTED.  It is further

**ORDERED** that defendants Bosch Rexroth Incorporated, Robert Bosch Corporation, and Bosch Rexroth Canada Corp/Corporation Bosch Rexroth Canada's Motion for Summary Judgment of Non-Infringement, Invalidity, and the Defense of Laches

[Docket No. 180] is DENIED IN PART.  Defendants' motion is denied with respect to the

laches defense.  The Court will address noninfringement and invalidity in a separate order.

DATED December 27, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge